IN RE SUMMER S.*
(AC 31109)

Bishop, Lavine and Foti, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued September 1—officially released October 19, 2010

*Keisha S. Gatison*, for the appellant (respondent father).

*Colleen B. Valentine*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

*Douglas G. Lilly*, for the minor child.

*Opinion*

PER CURIAM. "This appeal underscores the sad distinction between willingness and ability to parent a

child." *In re G.S.*, 117 Conn. App. 710, 712, 980 A.2d 935, cert. denied, 294 Conn. 919, 984 A.2d 67 (2009). The respondent father appeals from the judgment of the trial court terminating his parental rights with respect to his minor child, Summer.[1] The respondent claims that the court improperly (1) determined that the department of children and families (department) made reasonable efforts to reunify him with his child and (2) found that he failed to achieve a sufficient degree of personal rehabilitation, pursuant to General Statutes § 17a-112 (j) (3) (B), as would encourage the belief that within a reasonable time, considering the age and needs of the child, he could assume a responsible position in Summer's life. We affirm the judgment of the trial court.

"Our standard of review on appeal from a termination of parental rights is limited to whether the challenged findings are clearly erroneous.[2] . . . A finding is clearly erroneous when either there is no evidence in the record to support it, or the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . [G]reat weight is given to the judgment of the trial court because of [the trial court's] opportunity to observe the parties and the evidence. . . . [An appellate court does] not examine the record to determine

[1] The court also terminated the parental rights of Summer's mother. Because she has not appealed from that judgment, we refer in this opinion to the respondent father as the respondent.

[2] Alternatively, the respondent urges us to apply plain error review; see Practice Book § 60-5; to his claims because the court failed to apply relevant statutory law to the facts of this case. See, e.g., *State v. Moore*, 85 Conn. App. 7, 11, 855 A.2d 1006, cert. denied, 271 Conn. 937, 861 A.2d 510 (2004). "The plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Internal quotation marks omitted.). *In re Sarah S.*, 110 Conn. App. 576, 590–91, 955 A.2d 657 (2008). We conclude, after reviewing the record and the trial court's memorandum of decision, that the respondent's claim is without any merit.

whether the trier of fact could have reached a conclusion other than the one reached. . . . [Rather] every reasonable presumption is made in favor of the trial court's ruling." (Internal quotation marks omitted.) *In re Sole S.*, 119 Conn. App. 187, 191, 986 A.2d 351 (2010).

The respondent first claims that the court improperly determined that the department made reasonable efforts to reunify him with Summer. He argues that, in making its determination on May 11, 2009, the court did not consider that the department failed to teach him the skills necessary in order to care for his child. In essence, the respondent is arguing that the court failed to consider that the department provided inadequate reunification services because it did not ensure his completion in the necessary programs that would have facilitated reunification. We disagree.

"[R]easonable efforts means doing everything reasonable, not everything possible." (Internal quotation marks omitted.) Id., 192. In its memorandum of decision, the court noted that, despite repeated and proactive reunification efforts by the department, the respondent and the child's mother were unable to secure suitable housing, unwilling or unable to address their "chronic financial problems" and unable to stabilize sufficiently the mother's mental health and substance abuse issues or to rectify the respondent's detrimental codependence with the mother. Although the court acknowledged that the respondent attempted to comply with some of the reunification efforts facilitated by the department, he declined services that would have increased his ability "to forge his own individual relationship with Summer . . . ." In the end, the court determined that "[s]adly, the respondent['s] day-to-day living situation never stabilized long and sufficiently enough for reunification efforts to prove successful." Because there is ample evidence in the record

to support this determination, we conclude that the court's finding was not clearly erroneous.

The respondent next claims that the court improperly determined by clear and convincing evidence that he failed to achieve a sufficient degree of personal rehabilitation, pursuant to § 17a-112 (j) (3) (B),[3] as would encourage the belief that within a reasonable time he could assume a responsible position in Summer's life. First, the respondent contends that he has no "parenting issues to rehabilitate." Additionally, he argues that in making its determination, the court failed to take into account his willingness to separate from the mother in order to provide a stable environment for Summer.[4] We disagree.

In its memorandum of decision, the court acknowledged that the respondent may potentially have been capable of independently parenting Summer; however, his inability to separate from the mother and assume

---

[3] General Statutes § 17a-112 (j) (3) (B) provides for the termination of parental rights when the child "(i) has been found by the Superior Court or the Probate Court to have been neglected or uncared for in a prior proceeding, or (ii) is found to be neglected or uncared for and has been in the custody of the commissioner for at least fifteen months and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

[4] At oral argument before this court on September 1, 2010, the respondent's counsel was unable to support this assertion. On September 10, 2010, the respondent's counsel provided this court with a transcript page that purportedly supported the respondent's willingness to separate completely from the mother. After a thorough review of the respondent's entire testimony from the termination of parental rights hearing on April 29, 2009, we can find no conclusive facts or evidence showing that he was willing to separate completely from the mother and assume the role of primary caregiver for Summer. Although the respondent did file for divorce, his petition was withdrawn, and he was still living with the mother at the time of the hearings that decided whether his parental rights would be terminated.

the initiative as the primary caregiver for Summer precluded this option.[5] This conclusion was further supported by a court-ordered psychological evaluation that found that the respondent's inability to recognize the parenting limitations of the mother "demonstrate[d] a continued risk to Summer in their care." This decision by the court, however, was not achieved without an acute understanding regarding the position of the respondent. The court noted in its memorandum of decision that "[i]t is very clear that [the respondent and the mother] love Summer and want only the best for their daughter. Equally evident, however, is that the mother's significant mental health issues make it impossible for her to safely and appropriately parent Summer. For better or for worse, [the respondent and the mother], until April, 2009, presented [themselves] as a unified and isolated entity with virtually no community or family support." See footnote 5 of this opinion.

"[P]ersonal rehabilitation . . . refers to the restoration of a parent to his or her former constructive and useful role as a parent [and] requires the trial court to analyze the [parent's] rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time." (Internal quotation marks omitted.) *In re Gabrielle M.*, 118 Conn. App. 374, 379, 983 A.2d 282 (2009). "[I]n assessing rehabilitation, the critical issue is not whether the parent has improved her ability to manage her own life, but rather whether she has gained the ability to care for the particular needs of the child at issue." (Internal quotation marks omitted.) *In re Shyliesh H.*, 56 Conn. App. 167, 180, 743 A.2d 165 (1999).

[5] Notwithstanding the mother's shortcomings coping with basic day-to-day parenting obligations, as well as her struggles to maintain stable mental health, the respondent continued to allow her to be the primary caregiver for Summer.

We see no useful purpose in further repeating the facts or reciting the applicable law, as the court thoroughly set forth the relevant facts and the applicable law in its thoughtful and well reasoned decision. Based on our careful review, we conclude that the record amply supports the factual determinations made by the court, and we conclude that the court correctly applied the law to the facts it properly found. See *In re Mariah P.*, 109 Conn. App. 53, 55, 949 A.2d 1292, cert. denied, 289 Conn. 946, 959 A.2d 1012 (2008).

The judgment is affirmed.